UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEIRAN ZHENG, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIVE AUCTIONEERS LLC, a New York limited liability company,<br><br>Defendant. | Case No.: 20-cv-_____<br><br>**Jury Trial Demanded**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Peiran Zheng ("Plaintiff"), by and through counsel, brings this Class Action Complaint against Defendant Live Auctioneers LLC ("Live Auctioneers"), and alleges as follows based on personal knowledge as to his own experiences and on information, belief, and investigation as to all other matters:

**NATURE OF THE ACTION**

1. This class action arises out of Live Auctioneers' July 12, 2020, letter to Plaintiff and Class members informing them about a data security breach ("Data Breach") that impacted their Live Auctioneers account information, which included at least their names, email and mailing addresses, "visit history," phone numbers, credit card numbers and expiration dates, and account passwords ("Private Information").

2. Because of Live Auctioneers' unreasonable lack of oversight and lax security measures, prior to and on June 19, 2020, hackers infiltrated Live Auctioneers' computer network undetected and accessed Plaintiff's and Class members' Private Information without authorization;

viewed, accessed, extracted, and downloaded the information; and subsequently stored and maintained the information in unsecured, vulnerable, and untraceable locations for extended periods of time.

3. Live Auctioneers willfully, knowingly, and consciously disregarded known security risks to the Private Information; failed to implement appropriate and reasonable security protocols and policies to safeguard the Private Information; failed to properly train employees regarding risks of and protections against cyberattacks; and failed to properly monitor and update its network security and the systems that stored massive repositories of valuable Private Information and which Live Auctioneers knew or should have known inevitably would be targeted and tested by hackers at some point.

4. For instance, the hackers were able to access the decrypted usernames and passwords of Plaintiff and Class members because Live Auctioneers was using an algorithm known as MD5. This algorithm is widely recognized to be outdated and ineffective at encrypting passwords because it is susceptible to several types of hacking attack methods, such as brute-force and dictionary. Unlike MD5, reasonably available and industry standard hashing algorithms, such as Bcrypt, are preferable because they are more resistant to these types of attacks.[1] Had Live Auctioneers complied with commercially reasonable cybersecurity practices and its duties to take reasonable measures to safeguard Plaintiff's and Class members' Private Information, the Data Breach would not have happened, or it would have been reduced or mitigated.

5. As a direct and foreseeable result of the Data Breach, Live Auctioneers' inadequate security measures, Plaintiff and Class members have incurred injury in fact and sustained actual

---

[1] *See* https://portswigger.net/daily-swig/liveauctioneers-data-breach-millions-of-cracked-passwords-for-sale-say-researchers (last visited Nov. 12, 2020).

damages from the exposure and misuse of their Private Information, and reasonable attempts to safeguard their Private Information, mitigate their risk to identity theft and fraud, and remedy the effects of the Data Breach.

6. Plaintiff's and Class members' Private Information is now at risk because of Live Auctioneers' negligent conduct and deceptive acts and practices. The Private Information that Live Auctioneers collected and maintained has been placed in the hands of criminal hackers. Because electronic data like the Private Information is easily transferred and can be misused with great effect for criminal purposes, hackers typically offer the information for sale on black market websites. And because it is intangible property, many wrongdoers can possess it without diminishing its value, while severely impacting Plaintiff and Class members.

7. Plaintiff and Class members are especially susceptible to identity theft, hacking and phishing schemes now because electronic records of their personal information as well as their usernames and passwords were stolen. Therefore, hackers could attempt to use the stolen credentials to obtain access to victims' email, financial, medical, or other online accounts, or to pretend they are the victims themselves in order to defraud close family and friends causing reputational and professional harms.

8. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, statutory damages, treble damages, and injunctive relief including improvements to Live Auctioneers' data security and annual audits to ensure compliance with commercially reasonable standards.

9. Plaintiff brings this action against Live Auctioneers seeking redress for its unlawful conduct and asserting claims for negligence and violation of New York General Business Law § 349.

**PARTIES**

10. Plaintiff PEIRAN ZHENG is a natural person and citizen of Singapore.

11. Defendant LIVE AUCTIONEERS LLC is a limited liability company organized and existing under the laws of the State of New York with its principal place of business at 220 12th Avenue, 2nd Floor, New York, New York, 10001. Defendant's registered agent is Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

13. The Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District and its state of organization is New York.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District.

**COMMON FACTUAL ALLEGATIONS**

15. Sometime prior to and on June 19, 2020, hackers infiltrated Live Auctioneers' computer systems and gained unauthorized access to Plaintiff's and Class members' Private Information collected, used, and stored by Live Auctioneers.

16. The hackers copied the Private Information and extracted it from Live Auctioneers' systems. Once the Private Information was acquired by the hackers, the hackers moved the Private Information to insecure locations and systems controlled by them and then offered the stolen information for sale to other criminals online or used it themselves for illicit purposes.

17. On information and belief, the hackers were able to and in fact did make many more unauthorized copies of the Private Information and have disseminated it further without authorization, and/or have or will leverage the Private Information to obtain additional financial or personal information of Plaintiff and Class members to commit identity theft and fraud in the future.

18. On July 10, 2020, the cybersecurity research firm, CloudSEK, discovered that the Private Information of Plaintiff and Class members was offered for sale online. CloudSEK determined that hackers had placed the Private Information of 3.4 million users up for sale on an online forum used by criminals seeking to purchase consumer personal information without their knowledge.[2]

19. To verify the stolen data was from Live Auctioneers, the hackers provided numerous examples of the stolen user data that contained the victims' email address, usernames, encrypted and unencrypted passwords, names, physical addresses, and IP addresses.

20. According to Live Auctioneers' security incident notice,[3] Plaintiff's and Class members' Private Information was taken by the hackers on June 19, 2020.

21. Live Auctioneers has not provided verification or further details regarding the disposition of the data to know whether the hackers maintained the data in a sufficiently secure manner to prevent others from acquiring the Private Information while the hackers held it.

22. On information and belief, Plaintiff's and Class members' Private Information was sold and copied multiple times by unscrupulous and criminal actors and the data has been or may

---

[2] *See* https://cloudsek.com/threatintelligence/3-4-m-liveauctioneers-users-pii-and-cracked-passwords-for-sale-on-data-sharing-forum/ (last accessed on November 12, 2020).
[3] *See* https://help.liveauctioneers.com/article/496-july-11-2020-liveauctioneers-account-security (last visited November 12, 2020).

be sold and misused at a later date. Plaintiff and Class members act reasonably when they make reasonable payments and expenditures to avoid and mitigate the risk that criminals retained their Private Information to misuse and commit identity-theft related crimes and fraud that pose no threat of harm to Defendant, but significant harm to Plaintiff and Class members.

## FACTS SPECIFIC TO PLAINTIFF

23. Plaintiff opened an account with Live Auctioneers on its website. Live Auctioneers retained Plaintiff's login credentials, credit card information, and other personal information, including his Private Information.

24. On July 12, 2020, Live Auctioneers sent Plaintiff an email notifying him of the Data Breach.

25. In the email, Live Auctioneers stated that "an unauthorized third party accessed certain user data in the past two weeks through a security breach at a Live Auctioneers data processing partner."

26. In the email, Live Auctioneers stated that the stolen data "include user account information like names, email addresses, mailing addresses, visit history, phone numbers, last four digits of credit cards, credit card expiration dates, and encrypted passwords."

27. Live Auctioneers also advised on its website that "[t]he exposure of your Live Auctioneers credentials (i.e. login and password) could affect other online accounts you may have (if they use the same or similar credentials). You could also be exposed to impersonation and phishing attempts."[4]

---

[4] *See* https://help.liveauctioneers.com/article/496-july-11-2020-liveauctioneers-account-security (last accessed November 12, 2020).

28. Live Auctioneers also advised on its website for U.S. residents to place a "fraud alert" on their credit file with all three credit unions. *Id*.

29. Live Auctioneers recommended that Plaintiff and Class members take additional security measures to attempt to avoid and mitigate the risks resulting from the Data Breach.

30. Live Auctioneers "recommend[ed] you change passwords for any other online accounts for which you used the same or similar password as used for your Live Auctioneers account."

31. Live Auctioneers advised Plaintiff and Class members to "[r]eview your accounts for suspicious activity" and warned about "suspicious emails" and "unsolicited communications[.]"

32. As a result of the Data Breach, Plaintiff spent one hour updating the passwords on his various online accounts to protect them, which he would not have done had the Data Breach not occurred.

33. As a result of the Data Breach, for the past three months, Plaintiff has spent thirty minutes each month closely checking his bank and credit card statements for unauthorized or suspicious transactions, which he would not have had to do had the Data Breach not occurred.

34. As a result of the Data Breach, Plaintiff began to experience numerous attempts at identity theft and fraud. As a result of the Data Breach, Plaintiff was repeatedly called and texted from unknown sources. From August 28, 2020 to November 1, 2020, Plaintiff was called one to two times per day, including several times in the middle of the night, by someone who knew Plaintiff's name. The unsolicited phone calls came from rotating phone numbers that were impossible to block, yet they came from the same person. Plaintiff had not been receiving these unsolicited phone calls prior to the Data Breach.

35. Between September 3 and September 25, 2020, Plaintiff also received several (at least four) unsolicited text messages containing phishing attempts designed to lure Plaintiff into clicking on suspicious links. The messages all contained Plaintiff's name.

36. For instance, Plaintiff received the following text messages:

   a. "You have private invitation Peiran! Work online for up to 1,500 a day The company accepts 20 members: [link]"

   b. "Hello Peiran, we have been unable to reach you.  Your App will be reset at 6 pm if not requested: [link]"

   c. Can you work for our Company Peiran, we offer you up to 500 per hour. You can start here: [link]"

   d. "We need 8 new testers Peiran!! Can you afford 2 hours per day? The salary is up to 1.100 a day. More Details: [link]"

37. The messages were sent with hidden Caller ID information, so they were impossible to block.

38. Plaintiff's time and privacy, as well as the use and value of his phone were impaired and diminished, resulting in injury to Plaintiff. Plaintiff continues to be harassed by large volumes of unsolicited phone calls that did not beset him until the Data Breach occurred.

39. Plaintiff's Private Information is highly valuable to Plaintiff, Live Auctioneers, and identity thieves, unscrupulous actors, and criminals.

40. Plaintiff and Class members have a right to privacy and confidentiality in their Private Information.

41. As a result of the Data Breach, Plaintiff and Class members have suffered damages, their Private Information was misused, and they are exposed to unreasonable risks of identity theft

and fraud. As a result of the Data Breach, Plaintiff took reasonable expenditures in time and money to reduce, mitigate, and prevent identity theft, misuse, and fraud that threatens to impact his finances, credit history, and the integrity of his Private Information. The full scope of the risk and what Private Information was exposed is not presently known by Plaintiff and Class members.

## CLASS ACTION ALLEGATIONS

42. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class defined as follows:

All persons whose Private Information was accessed in the Data Breach.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

43. **Numerosity**: The exact number of Class members is unknown to Plaintiff, but individual joinder is impracticable. According to CloudSEK, the records of 3.4 million Live Auctioneers accounts were being sold on the cyber black market.[5]

44. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and Class members sustained damages arising out of the same acts and

---

[5] *See* https://cloudsek.com/threatintelligence/3-4-m-liveauctioneers-users-pii-and-cracked-passwords-for-sale-on-data-sharing-forum/ (last accessed on November 12, 2020).

omissions of Live Auctioneers relating to its failure to protect, oversee, monitor, and safeguard the Private Information.

45. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

46. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Live Auctioneers has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class members and making final injunctive relief appropriate with respect to the Class as a whole. Live Auctioneers' practices challenged herein apply to and affect Class members uniformly, and Plaintiff's challenge to those practices hinge on Live Auctioneers' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.    Whether Live Auctioneers failed to maintain reasonable security procedures;

  b.  Whether Live Auctioneers' conduct constitutes negligence;

  c.  Whether Live Auctioneers' conduct constitutes deceptive acts or practices in violation of New York General Business Law § 349;

  d.  Whether Plaintiff and Class members are entitled to damages and injunctive relief.

48. **Superiority**: This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small in comparison to the burden and expense of individual prosecutions of litigation necessitated by Live Auctioneers' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Live Auctioneers' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties and the court systems of many states and federal districts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## CAUSES OF ACTION

### COUNT I
### Negligence

49. Plaintiff incorporates paragraphs 1–48 as if fully set forth herein.

50. Live Auctioneers owed a duty to Plaintiff and Class members to properly vet and oversee vendors who maintain, store, and manage Plaintiff's and Class members' Private

Information, and to implement and maintain reasonable data security practices to protect the Private Information from foreseeable cyberattacks and unauthorized access.

51. Live Auctioneers owed a duty to Plaintiff and Class members to notify them that their Private Information had been disclosed to and accessed by unauthorized criminal hackers.

52. Live Auctioneers breached these duties and the applicable standards of care by:

   a. Failing to conduct proper and reasonable due diligence over vendors' data security systems, practices, and procedures;

   b. Failing to conduct proper and reasonable due diligence over the vendors or contractors that were the vector(s) of and/or facilitated the hackers' infiltration into the system(s) storing Plaintiff's and Class members' Private Information;

   c. Failing to maintain reasonable and appropriate oversight and audits on vendors or contractors that were the vectors of the hackers' infiltration into the system(s) storing Plaintiff's and Class members' Private Information;

   d. Failing to implement and maintain reasonable safeguards and procedures to prevent the unauthorized disclosure of Plaintiff's and Class members' Private Information, including but not limited using obsolete and insufficient encryption to encrypt and store account access credential information;

   e. Failing to monitor and detect unauthorized activity in confidential and sensitive data environment(s) storing Plaintiff's and Class members' Private Information reasonably and appropriately in order to repel or limit the Data Breach;

   f. Failing to undertake reasonable and sufficient incident response measures to ensure that the intrusion that resulted in the Data Breach would not expose and cause disclosure and unauthorized acquisition of Plaintiff's and Class members' Private Information; and

   g. Failing to ensure that any and all unauthorized copies of Plaintiff's and Class members' Private Information was deleted, destroyed, rendered unable to be used, or returned to Plaintiff and Class members.

  53. Defendant is both the actual and legal cause of Plaintiff's and Class members' injuries. Had Defendant adopted and maintained reasonable data security procedures, Plaintiff and Class members would not have been damaged or would have been damaged to a lesser degree than they actually were.

  54. Plaintiff and Class members have suffered damages in that their stolen information has already been used and they are now exposed to a heightened risk that their information will be misused in the future; the stolen information caused Plaintiff and Class members to incur a loss of value in their Private Information; after learning about the Data Breach, Class members purchased identity theft protection in an attempt to minimize the risks to their Private Information; Plaintiff and Class members spent time changing passwords and monitoring their financial accounts in an attempt to minimize the risks to their Private Information; Plaintiff and Class members have been subjected to phishing attempts, identity theft and fraud, and harassing unsolicited text messages and phone calls; and Plaintiff and Class members are still incurring ongoing damages while trying to ascertain the full scope of the problem waiting for Live Auctioneers to complete its investigation and share the details of it with Plaintiff and the Class.

## COUNT II
## Violation of New York General Business Law § 349

55. Plaintiff repeats and realleges paragraphs 1–48 as if fully set forth herein.

56. New York General Business Law ("GBL") § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York.

57. Live Auctioneers furnished its services to Plaintiff and Class members from and in New York. By connecting sellers with potential buyers through its online platform, tools, and features, Live Auctioneers acts as a marketplace that facilitates millions of live bidding transactions daily from and in New York.[6]

58. Live Auctioneers solicited, accepted, retained, and stored Plaintiff's and Class members' Private Information for commercial purposes and for its own benefit.

59. Live Auctioneers engaged in deceptive acts or practices in violation of GBL § 349 by, among other things, omitting and failing to disclose the following material facts:

    a. That it failed to conduct proper and reasonable due diligence over vendors' data security systems, practices, and procedures;

    b. That it failed to conduct proper and reasonable due diligence over the vendors or contractors that would be and were the vectors of and/or facilitated the hackers' infiltration into the system(s) storing Plaintiff's and Class members' Private Information;

    c. That it failed to maintain reasonable and appropriate oversight and audits on vendors or contractors that would be and were the vectors of the hackers'

---

[6] *See* https://www.liveauctioneers.com/features (last visited November 12, 2020).

        infiltration into the system(s) storing Plaintiff's and Class members' Private Information;

    d.    That it failed to implement and maintain reasonable safeguards and procedures to prevent the unauthorized disclosure of Plaintiff's and Class members' Private Information, including but not limited to using obsolete and insufficient encryption methods to encrypt and store account access credential information;

    e.    That it failed to monitor and detect unauthorized activity in confidential and sensitive data environment(s) storing Plaintiff's and Class members' Private Information reasonably and appropriately in order to repel or limit the Data Breach;

    f.    That it failed to undertake reasonable and sufficient incident response measures to ensure that the intrusion that resulted in the Data Breach would not expose and cause disclosure and unauthorized acquisition of Plaintiff's and Class members' Private Information; and

    g.    That it failed to ensure that any and all unauthorized copies of Plaintiff's and Class members' Private Information was deleted, destroyed, rendered unable to be used, or returned to Plaintiff and Class members.

60.    Defendant is both the actual and legal cause of Plaintiff's and Class members' injuries. Had Defendant disclosed to Plaintiff and Class members that it failed to adopt and maintain reasonable data security procedures, Plaintiff and Class members would not have entrusted Defendant with their Private Information, and would not have been damaged or would have been damaged to a lesser degree than they actually were.

61. Plaintiff and Class members have suffered damages in that their stolen information has already been used and they are now exposed to a heightened risk that their information will be misused in the future; the stolen information caused Plaintiff and Class members to incur a loss of value in their Private Information; after learning about the Data Breach, Class members purchased identity theft protection in an attempt to minimize the risks to their Private Information; Plaintiff and Class members spent time changing passwords and monitoring their financial accounts in an attempt to minimize the risks to their Private Information; Plaintiff and Class members have been subjected to phishing attempts, identity theft and fraud, and harassing unsolicited text messages and phone calls; and Plaintiff and Class members are still incurring ongoing damages while trying to ascertain the full scope of the problem waiting for Live Auctioneers to complete its investigation and share the findings with Plaintiff and the Class.

62. Pursuant to GBL § 349(h), Plaintiff brings this action to recover his actual damages or fifty dollars, whichever is greater.

63. Pursuant to GBL § 349(h), Plaintiff seeks injunctive relief, including an order requiring Live Auctioneers to update and continuously maintain industry standard and commercially reasonable data security practices and incident response practices, to include the requirement that Live Auctioneers update its methods for encrypting access to credentials kept in storage, conducting audits on its vendors that maintain and store access to credentials of Live Auctioneers users, and other injunctive relief measures as may be necessary and appropriate.

64. Defendant's violations of GBL § 349 were committed willfully and knowingly such that treble damages are warranted under GBL § 349(h).

65. Plaintiff seeks reasonable attorney's fees and costs under GBL § 349(h).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff PEIRAN ZHENG, individually and on behalf of the Class, prays for the following relief:

A.  An order certifying the Class as defined above, appointing Plaintiff as the Class representative, and appointing Plaintiff's counsel as Class counsel;

B.  An order declaring that Defendant's actions, as set out above, constitute negligence;

C.  An order declaring that Defendant's actions, as set out above, constitute a violation of the New York General Business Law;

D.  An injunction requiring Live Auctioneers to update and continuously maintain industry standard and commercially reasonable data security practices and incident response practices, to include the requirement that Live Auctioneers update its methods for encrypting access to credentials kept in storage, conducting audits on its vendors that maintain and store access to credentials of Live Auctioneers users, and other injunctive relief measures as may be necessary and appropriate;

E.  Judgment in favor of Plaintiff and the Class and against Defendant, and an award of damages, including punitive damages, attorney's fees and costs;

F.  Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

                                         */s/ Javier L. Merino*
                                         Javier L. Merino
                                         DANN LAW
                                         42 Broadway, 12th Floor
                                         New York, NY 10004
                                         Tel: (216) 373-0539
                                         Fax: (216) 373-0536
                                         notices@dannlaw.com

Mark L. Javitch (pro hac vice forthcoming)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo CA 94401
Tel: (650) 781-8000
Fax: (650) 648-0705

Thomas A. Zimmerman, Jr. (pro hac vice forthcoming)
*tom@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
www.attorneyzim.com

*Attorneys for Plaintiff and the Putative Class*